**Leo P. PORTNOY, Plaintiff-Appellant,**

v.

**TEXAS INTERNATIONAL AIRLINES, INC., et al., Defendants-Appellees.**

**No. 81–1031.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1982.

Decided May 14, 1982.

Jerrold M. Shapiro, Chicago, Ill., for plaintiff-appellant.

Joan M. Hall, Jenner & Block, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, MARKEY,* Chief Judge, and POSNER, Circuit Judge.

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

CUMMINGS, Chief Judge.

This Portnoy's Complaint asserts that he is a stockholder of Texas International Airlines (TIA) and that under Section 16(b) of the Securities Exchange Act of 1934,[1] TIA ought to recover short-swing profits supposedly realized by defendants National Aviation & Technology Corporation, GATX Aircraft Corporation, and MEI Corporation. Portnoy brought this suit on behalf of TIA because it purportedly refused to take action.[2]

On August 24, 1972, the three defendants acquired TIA warrants as part of a reorganization necessitated by TIA's financial difficulties. Warrants to buy stock are equity securities for the purposes of Section 16(b). See 15 U.S.C. § 78c(a)(11). Each defendant acquired a number of warrants sufficient to make it a 10% beneficial owner of a class of equity securities of TIA and therefore subject to Section 16(b). The warrants entitled their holders to purchase TIA common stock at a price of $4.18 per share and were exercisable through June 20, 1982.

On November 29, 1978, the defendants and 19 other TIA warrantholders sold their warrants for $4.725 per warrant to three underwriters.[3] On December 6, 1978, the underwriters exercised the warrants and paid TIA $4.18 for each underlying share of common stock. These shares and other shares purchased from TIA were sold by the underwriting group to the public at $9.625 per share, giving the underwriters a 72¢ per share spread.

The public offering of the TIA common stock was made pursuant to a "firm commitment" underwriting by which the underwriters simply agreed to purchase at stated prices specified quantities of warrants and securities. In particular, the defendants' sale of the warrants to the underwriters was not conditioned nor dependent in any way upon the success of the public offering. The underwriters would bear the loss if they could not resell the securities to the public or if they had to lower the selling price to the public.

The theory of the complaint was that despite the underwriters' public offering of TIA shares, the defendants were responsible for both the exercise of the warrants (a "purchase" of TIA stock) and the subsequent sale of TIA stock to the public.[4] This purchase and sale of securities occurred within six months and earned the defendants a profit which Portnoy calculated to be $2,428,854. The complaint sought that amount as short-swing profits under Section 16(b).

The defendants filed motions to dismiss the complaint supported by three affidavits showing that they had not purchased nor agreed to purchase any TIA securities within six months of the sale of the warrants to the underwriters. This prompted Portnoy

---

1. Section 16(b) provides in pertinent part as follows:

   For the purpose of preventing the unfair use of information which may have been obtained by [a 10 per cent] beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any *purchase and sale*, or any *sale and purchase*, of any equity security of such issuer * * * within any period of less than six months * * * shall inure to and be recoverable by the issuer * * *. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in the behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request * *. This subsection shall not be construed to cover any transaction where such beneficial owner was not such *both at the time of the purchase and sale, or the sale and purchase,* of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

   15 U.S.C. § 78p(b) (emphasis supplied).

2. Although TIA has been named as a nominal defendant, recovery is sought only from the three other defendants. Consequently "defendants" in this opinion refers only to them.

3. The underwriters were Smith Barney, Harris Upham & Co., Incorporated; Goldman, Sachs & Co.; and Kidder, Peabody & Co., Incorporated.

4. The underwriters' exercise of the warrants and sale of TIA stock to the public was exempt from Section 16(b) liability under Rule 16b-2, 17 C.F.R. § 240.16b-2.

to file a cross-motion for summary judgment alleging that the three underwriters sold the TIA underlying common stock to the public at $9.625 per share on November 29, 1978 (actually December 6, 1978), with the net proceeds of $4.725 per warrant then received by the defendants, "resulting in a net profit to them of approximately $2,428,-854." No affidavits accompanied the cross-motion for summary judgment. However, in response to Portnoy's motion the defendants submitted three additional affidavits from officers of the three underwriters stating that they purchased and exercised the warrants for their own accounts as principals and did not act as "agents, conduits or intermediaries" of the selling warrantholders. The uncontroverted affidavits made clear that the selling warrantholders did not participate in any way in the exercise of the warrants and that the underwriters did not exercise the warrants on behalf of the selling warrantholders.

After considering the defendants' motions to dismiss, the affidavits and the plaintiff's cross-motion for summary judgment, Judge Grady denied the plaintiff's motion for summary judgment and dismissed the case.[5] We affirm.

*Defendants Sold the Warrants Without a Corresponding Purchase Within Six Months*

■ In 1972, the Supreme Court decided that a corporation avoids liability "if [it] sells more than six months after purchase" and that "Liability cannot be imposed simply because the investor structured his transaction with the intent of avoiding liability under § 16(b)." *Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575. As the Court noted, when "insider" status arises from the beneficial ownership of 10% of a class of stock, Section 16(b) does not impose liability unless the "insider," here defendants, was the owner "both at the time of the purchase and sale," or the sale and purchase, of the security involved. 404 U.S. at 419, 424, 92 S.Ct. at 597, 600. Here the defendants did not engage in both a purchase and sale or sale and purchase of the TIA securities within a six-month period. They had acquired their TIA warrants in 1972 and did not sell them to the underwriters until more than six years later. The affidavits of the underwriting concerns show that after the defendants sold their warrants, they exercised no ownership or control over them and could not benefit or suffer from any subsequent fluctuations in the value of the warrants (Sup.App. 4–14). The defendants were in no way "beneficial owners" of the stock received by the underwriters upon exercise of the warrants. Portnoy's argument that the exercise of the warrants and sale of stock to the public should be attributed to the defendants on the ground that the underwriters were merely agents, conduits or intermediaries for the defendants was therefore correctly rejected by Judge Grady.

This same type of situation was involved in the recent decision of *Portnoy v. Memorex Corporation,* 667 F.2d 1281 (9th Cir. 1982). There the same plaintiff employing the same attorney alleged that the Bank of America Foundation was liable under Section 16(b) because it sold warrants to purchase Memorex stock to underwriters of a public offering of Memorex stock in a "firm commitment" underwriting. The underwriters there as here were bound to exercise the warrants and did so, then selling the Memorex stock to the public. The court refused to hold that the Foundation had engaged in a purchase and sale of Memorex stock because, as here, "The underwriters purchased warrants and stock for their own account as principals. They were not agents of the Bank or of the Foundation."

**5.** Although the first paragraph of the district court's memorandum opinion stated "We deny plaintiff's motion for summary judgment and dismiss this case" (App. 13), the close of the opinion states "The plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment is granted" (App. 17). Because of Rule 56(e) of the Federal Rules of Civil Procedure, summary judgment for defendants was appropriate in that plaintiff did not establish by affidavits or otherwise that there was any genuine issue for trial. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 362 n. 16, 93 S.Ct. 1652, 1657 n. 16, 36 L.Ed.2d 318.

*Id.* at 1282. Since "There was a sale, but no purchase, of the warrants by the [defendant] Foundation" (*Id.* at 1283), Section 16(b) was held inapplicable, in accord with *Reliance Electric Co., supra,* and *Foremost-McKesson, Inc. v. Provident Securities Co.,* 423 U.S. 232, 96 S.Ct. 508, 46 L.Ed.2d 464. The insider abuses Congress intended to penalize through Section 16(b) are simply non-existent in the present case. We agree with the Ninth Circuit [6] and therefore conclude that the transaction at issue does not come within Section 16(b) of the Securities Exchange Act of 1934.

*This Transaction Was Not A Sham*

■ Citing *Bershad v. McDonough,* 428 F.2d 693 (7th Cir. 1970), certiorari denied, 400 U.S. 992, 91 S.Ct. 458, 27 L.Ed.2d 440, the plaintiff contends that the defendants "simply structured this sham transaction in a furtive attempt to avoid the punitive Draconian mandate of § 16(b)" (Br. 17). In *Bershad,* the question before us was whether a transaction between the defendants and a corporation which had the right to purchase their stock took place within the six-month period contemplated by Section 16(b). *Bershad* is inapplicable because the present case does not involve an issue as to the date of sale for Section 16(b) purposes. In any event, the uncontroverted affidavits establish that these defendants engaged in a bona fide sale to the underwriters, thus entitling defendants to receive favorable long-term capital gains treatment. Unlike cases on which Portnoy relies, the defendants did not exercise but sold these warrants to the independent underwriters without engaging in any corresponding purchase of TIA securities within six months of the sale. Therefore there was no Section 16(b) liability. *Rosen v. Drisler,* 421 F.Supp. 1282 (S.D.N.Y.1976); 2 L. Loss, Securities Regulation 6C at 1080 (2d ed. 1961).

Although asked repeatedly at oral argument to flesh out how the "sham" in this case had been perpetrated, counsel for Portnoy only reiterated his position in the briefs that the form of this transaction alone—the advantage taken by defendants of the underwriters' exemption from Section 16(b) liability—sufficed to entail the defendants' liability. Form alone does suffice when there is both a purchase and sale within six months. But we are not inclined to extend Section 16(b) liability without fault beyond the lines already drawn by Congress. Indeed we have no choice: "This subsection [16(b)] *shall not be construed* to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved * * *." 15 U.S.C. § 78p(b) (emphasis added). As the Supreme Court noted in *Foremost-McKesson, Inc. v. Provident Securities Co.,* 423 U.S. 232, 255, 96 S.Ct. 508, 521, 46 L.Ed.2d 464. "Congress * * * has left some problems of the abuse of inside information to other remedies."

For the foregoing reasons, it is clear that the defendants did not exercise warrants but sold them unmatched by any purchase within six months. Therefore Section 16(b) does not apply.

Judgment affirmed.

---

**6.** To the same effect see *Portnoy v. Seligman & Latz, Inc.,* 516 F.Supp. 1188 (S.D.N.Y.1981), the third of the series of similar cases brought and lost by this plaintiff. There Judge Tenney refused to apply Section 16(b) because the statutory prerequisite pairing of purchases and sales was missing. As he picturesquely said,

To sum up, the Singers [defendants] may have realized their profits "shortly" after signing the underwriters agreement, but without a pairing of transactions, their profits cannot be called "swing." And as Duke Ellington said, "It don't mean a thing if it ain't got that swing."

516 F.Supp. at 1200.